IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

| | |
|---|---|
| THE ESTATE OF DEANDRE DAVIS;<br>DHADREKA BAILEY, individually and on<br>behalf of all entitled to recover; and<br>LaQuarius Hall, individually and on behalf of all<br>entitled to recover | PLAINTIFF |
| VS. | CAUSE NO. 5:20-cv-101-DCB-MTP |
| MANAGEMENT & TRAINING CORPORATION,<br>and JOHN AND JANE DOES 1-10 | DEFENDANTS |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

COME NOW the Plaintiffs, The Estate of DeAndre Davis, Dhadreka Bailey, and LaQuarius Hall, by and through the undersigned counsel, and file this, their First Amended Complaint. The Defendants have not yet been served, nor has any responsive pleading been filed as of the date of the filing of this Amended Complaint. In support of their Amended Complaint, the Plaintiffs would show unto the Court the following:

1. DeAndre Davis, deceased, was an inmate at the Wilkinson County Correctional Facility ("WCCF") in Wilkinson County, Mississippi, when he was brutally attacked and stabbed to death by other inmates at WCCF on August 30, 2017. The Estate of DeAndre Davis is the properly-instituted legal entity representing Mr. Davis' estate, of which Dhadreka Bailey has been named Administratrix (See Exhibit 1.) The Estate is a Plaintiff to this action.

2. Plaintiff Dhadreka Bailey, the daughter of the decedent, is an adult resident citizen of Missouri and a wrongful death beneficiary. She is a party individually and also represents all persons entitled to recover for the wrongful death of DeAndre Davis.

3. Plaintiff LaQuarius Hall, the son of the decedent, is an adult resident citizen of Arkansas and a wrongful death beneficiary. He is a party individually and also represents all persons entitled to

1

recover for the wrongful death of DeAndre Davis.

4. Management & Training Corporation (hereinafter referred to as "MTC") is a national operator of for-profit prisons, incorporated and existing in the State of Utah but doing business in and with the State of Mississippi. At all times material hereto, MTC managed the Wilkinson County Correctional Facility. MTC may be served with process by serving their registered agent for process: CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232.

5. Defendants John Does 1-10 are unknown individuals and/or entities liable to Plaintiff for the acts and omissions as alleged herein. The names and capacities of Defendants John Does 1-10 inclusive, whether individual, corporate or otherwise, are presently unknown to Plaintiff, who, therefore sue said Defendants by fictitious names and will further seek leave of this Honorable Court to amend this Complaint to show their true names and capacities when the same are ascertained. Plaintiff alleges upon information and belief each of the Defendants designated herein as a Doe is responsible in some manner and liable herein to Plaintiff by reason of negligence, wanton and reckless misconduct, breach of warranty and/or in some other manner whether alleged herein in this Complaint or not, and by such wrongful conduct, said Defendants, each of them, proximately caused the injury and damage occasioned herein.

6. At all times material to this Complaint, Defendants were acting under the color of the statutes, customs, ordinances and usage of the State of Mississippi, pursuant to contract with the Mississippi Department of Corrections.

## **JURISDICTION AND VENUE**

7. This action arises under the Eighth Amendment to the United States Constitution and 42 U.S.C. § 1983. Jurisdiction of this Court arises under 28 U.S.C. §§ 1331 and 1367(a) (supplemental jurisdiction) for state law tort claims.

8. Jurisdiction of this Court for the pendent claims is authorized by F.R.Civ.P. 18(a), and arises under the doctrine of pendent jurisdiction as set forth in *United Mine Workers v. Gibbs,* 383 U.S. 715 (1966).

9. Venue is proper in that the cause of action arose in the Southern District of Mississippi, Western Division.

## FACTS

*MTC's Ongoing Failures at WCCF*

10. Originally designed to house low- and medium-security inmates, WCCF opened in 1998. Subsequent to the closure of the violent and unsafe Unit 32 at the Mississippi State Penitentiary at Parchman, Mississippi ("Parchman") in 2010, WCCF was repurposed as a housing facility for high-security inmates.

11. Once high-security inmates arrived at WCCF, the inability of staff at the facility to handle the violent nature of high-security inmates became apparent. From 2011 until July of 2013, when Corrections Corporation of America ("CCA") managed WCCF, the chance of an inmate being assaulted while at WCCF was 1-in-7, which made it by far the most violent prison in the state. After MTC took over management of WCCF, the violence continued.

12. In a harrowing article by renowned investigative journalist Jerry Mitchell, WCCF was described as a "living…Martin Scorsese movie" with street gangs in control of the facility, roaming the prison with homemade "samurai swords."[1] Under MTC control, WCCF earned and maintained the nickname "The Killing Field."

13. WCCF is a prison for close (high-security) custody inmates. Defendant MTC has managed WCCF since 2013 pursuant to a contract with the Mississippi Department of Corrections.

---

[1] https://www.clarionledger.com/story/news/2014/10/11/killing-field-prison-gangs-roam-homemade-swords/17121603/

3

Under said contract and standing in the place of MDOC, MTC has the responsibility for providing humane care and treatment of prisons consistent with all constitutional and American Correctional Association standards.

14. MTC did not improve conditions at WCCF after taking control from CCA in 2013. Upon information and belief, WCCF remains either the most violent prison in Mississippi or the second-most violent over the period of time from July 2013 when MTC took over the facility to August 30, 2017 when Mr. Davis was killed.

15. Unfortunately, MTC has failed for years to adequately staff the WCCF facility. Upon information and belief, approximately 33% of the guard jobs at WCCF were vacant on the day Mr. Davis was killed. Also, annual staff turnover during the time period surrounding his killing reached nearly 90%. Further, MTC has failed to adequately train and supervise the staff they do have in place at the facility. These failures have led to frequent, sometimes deadly, violence. In the 6 months preceding Mr. Davis' killing, two other inmates were killed in inmate-on-inmate violence at WCCF.

16. In addition to the failure to adequately staff the facility and train/supervise the staff that is in place, a terrible culture flaw exists in the management of WCCF. In June of 2019, the Marshall Project, a nonprofit journalism organization that covers America's criminal justice system, uncovered an internal audit prepared by MTC about the operations of WCCF. According to the audit, then-WCCF Warden Jody Bradley established a custom and practice of allowing gangs such as the Vice Lords and Gangster Disciples to maintain order in the prison. In effect, MTC officials ceded control of WCCF to violent gangs and then trusted the gangs would do the work of the missing prison guards.

*The Killing of DeAndre Davis*

17. On Wednesday, August 30, 2017, it was business as usual at WCCF. MTC had failed to

adequately staff the facility with an appropriate number of guards to prevent inmate-on-inmate violence or adequately respond to it. Further, MTC had failed to adequately train and supervise the guards that were present that day. Around 5:00 p.m. that fateful day, DeAndre Davis found himself in the common area of C Pod at WCCF. A fight broke out among inmates, and fellow inmate Broderick Stewart began stabbing Mr. Davis in the chest with a "shiv," or prison-made knife, similar to the hundreds of others that have been present in the WCCF facility during MTC's management of the prison.

18. When guards arrived, they used a chemical spray to try to break up the melee. Mr. Davis was then removed from C pod, and emergency medical services were requested.

19. Around 30 minutes after he was stabbed, emergency medical technicians arrived at Mr. Davis's side and attempted to save his life. They were unsuccessful.

20. As a direct and proximate result of the Defendants' conduct, Mr. Davis suffered physical and emotional pain and suffering, and died. His estate and wrongful death heirs are entitled to relief.

## CAUSES OF ACTION

### COUNT I

### VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. § 1983

21. The Plaintiffs incorporate herein all allegations set forth above in the preceding paragraphs.

22. Defendant MTC's policies and practices, and those of its staff, subjected Mr. Davis to a substantial and obviously foreseeable risk of serious harm and injury. These policies and practices were implemented and acted upon by the Defendants acting under the color of state law, and caused Mr. Davis to be deprived of his rights secured by the United States Constitution under the Eighth Amendment, which resulted in the injuries to and death of Mr. Davis.

23. As described above, Defendants were aware of the deprivations complained of herein,

and have condoned or been deliberately indifferent to such conduct. Further, the Defendants authorized and entrusted violent prison gangs to perform security functions that should have been performed by the Defendants. Therefore, the Defendants had a sufficiently culpable state of mind. Their conduct also led to Mr. Davis's death, which makes said conduct harmful enough and sufficiently serious to be a violation of constitutionally protected rights.

## COUNT II

## WRONGFUL DEATH

24. The Plaintiffs incorporate herein all allegations set forth above in the preceding paragraphs.

25. Due to Defendants' negligence, gross negligence, and intentional acts in causing the death of Mr. Davis, wrongful death beneficiaries are entitled to all damages allowed under Mississippi's wrongful death statute, Miss. Code Ann. § 11-7-13. Mr. Davis's estate is entitled to be reimbursed sums expended for funeral and related expenses.

26. Further, the Defendants' grossly negligent and intentional behavior entitle the Plaintiffs to an award of punitive damages.

27. At the time of his death, Mr. Davis was just thirty-nine years old and in good health. He had a normal life expectancy. Although he was serving a life sentence in the custody of the Mississippi Department of Corrections, he maintained communication with his family.

28. Damages include, but are not limited to, the loss of Mr. Davis's society, love, companionship, and emotional support.

29. Dhadreka Bailey, the deceased's daughter, has suffered mental pain, suffering, grief, and anguish as a result of the unnecessary loss of her father, and should be compensated for the personally-destructive effects of his tragic death.

30. LaQuarius Hall, the deceased's son, has suffered mental pain, suffering, grief, and anguish as a result of the unnecessary loss of his father and should be compensated for the personally-destructive effects of his tragic death.

## COUNT III

## NEGLIGENCE/GROSS NEGLIGENCE

31. The Plaintiffs incorporate herein all allegations set forth above in the preceding paragraphs.

32. At all times materials hereto, each Defendant had a duty to exercise ordinary care for the prisoners at WCCF, including Mr. Davis. Each Defendant breached that duty, by failing to use ordinary care that a reasonable person would use to avoid and prevent injury to others, i.e. in this case to have properly staffed and managed C Pod on August 30, 2017 and thereby avoid the stabbing death of Mr. Davis. Further, the Defendants authorized and entrusted violent prison gangs to perform security functions that should have been performed by the Defendants.

33. Mr. Davis's injuries and death were the reasonably foreseeable outcome of Defendants' acts and omissions. These acts and/or omissions were substantial factors in bringing about Mr. Davis's injuries and the accompanying damages sustained.

## COUNT IV

## NEGLIGENT HIRING AND SUPERVISION

34. Mr. Davis incorporates herein all allegations set forth above in the preceding paragraphs.

35. The Defendants had a duty to properly screen, hire, train and supervise their employees and agents. However, these Defendants failed in this duty and negligently hired, inadequately trained, negligently supervised and retained their employees and agents, including but not limited to the other named and unnamed Defendants.

36. The negligence of said Defendants proximately caused or contributed to the injuries to and death of Mr. Davis.

## COUNT V

## PREMISES LIABILITY

37. The Plaintiffs incorporate herein all allegations set forth above in the preceding paragraphs.

38. Mr. Davis was an invitee upon the premises at WCCF, which was maintained, operated, and managed by the Defendants. Mr. Davis was on the premises of the WCCF for the mutual benefit of himself and the Defendants. As a result, the Defendants owed Mr. Davis a duty to maintain the premises in a safe and reasonable manner, and to keep Mr. Davis safe from unreasonable harm. Further, the Defendants owed Mr. Davis a duty to protect him from the foreseeable criminal acts of others.

39. As set forth above, the Defendants failed to provide adequate staffing and security at WCCF. Additionally, the Defendants worked in concert with prison gangs (or "security threat groups" as the Defendants called them) to control the activities of inmates. Members of these prison gangs were classified by MDOC as "high-security" inmates, meaning they had committed acts of violence and were at risk for committing future acts of violence, and that the Defendants were aware of their violent nature. By failing to adequately hire and train staff, and by entrusting the safety of prisoners to members of prison gangs, the Defendants breached their duty to keep WCCF in a reasonably safe condition, to keep Mr. Davis from unreasonable harm, and to protect Mr. Davis from the foreseeable criminal acts of others.

40. Breaching these duties by failing to adequately hire and train staff and by putting violent gangs in charge of the security of the prison were the legal causes of the injuries to and death of Mr. Davis, as this type of injury was reasonably foreseeable. These breaches were also the cause in fact of

the injuries to and death of Mr. Davis, because but for these breaches the injuries to and death of Mr. Davis would not have occurred. As a result of the Defendants' negligence, the Plaintiffs suffered damages.

41. Alternatively, the Defendants owed a duty to Mr. Davis to not willfully or wantonly injure him. By knowingly failing to adequately hire and train staff, and by entrusting the safety of prisoners to members of prison gangs, the Defendants consciously disregarded a known serious danger, thus breaching their duty to not willfully or wantonly injure Mr. Davis. As a result, the Plaintiffs suffered damages.

42. The Defendants had prior knowledge of the violent nature of the third parties whose attack upon Mr. Davis was the proximate cause of the injuries complained of herein. The Defendants then placed these individuals in a position of authority over Mr. Davis by entrusting them with maintaining order as they see fit, thereby actively and affirmatively, with a degree of conscious decision-making, impelling the conduct of the individuals who assaulted and killed Mr. Davis.

43. Furthermore, as outlined hereinabove, an atmosphere of violence existed at WCCF. Upon information and belief, three or more separate violent events occurring at WCCF within the three years preceding the stabbing death of Mr. Davis led to three or more arraignments of an individual for a felony involving an act of violence.

44. Finally, given the nature of the business operated by MTC (a prison for violent inmates) and the vast number of incidents of violence at WCCF, such an incident was reasonably foreseeable, and MTC had a duty to prevent such harm by providing adequate security. Tragically, MTC failed to do so despite the known danger.

**PUNITIVE DAMAGES**

45. The conduct of Defendants was willful, malicious, oppressive and/or reckless, grossly

negligent and was of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein. Further, such an award pursuant to 42 U.S.C. § 1983 would serve to prevent and deter official illegality.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that upon the filing of this Complaint that this Honorable Court will set this matter for a full and complete trial by jury on the merits and upon completion of the same, enter a judgment granting damages for the following:

a. Permanent emotional injury;

b. Damages for deprivation of civil rights;

b. Pain and suffering;

c. Economic damages;

d. Loss of enjoyment of life;

e. Wrongful death;

f. Past, present and future emotional distress and mental anguish;

g. Punitive damages in an amount sufficient to deter such future conduct;

g. Court costs;

h. Pre- and post-judgment interest;

i. Attorney's fees pursuant to 42 U.S.C. § 1988;

j. Any and all out of pocket expenses; and

k. All other damages of every kind to the Plaintiffs to which they are entitled by law.

Respectfully submitted, this the 16th day of April, 2020.

*/s/ J. Matthew Eichelberger*
J. Matthew Eichelberger (MSB No. 101060)
Attorney for the Plaintiffs

*/s/ Jennie A. Eichelberger*
Jennie A. Eichelberger (MSB No. 102522)
Attorney for the Plaintiffs

Eichelberger Law Firm, PLLC
308 E Pearl St, Ste 201
Jackson, MS 39201
Telephone: 601-292-7940
Facsimile: 601-510-9103
Email: jennie@ike-law.com
Email: matt@ike-law.com
Web: www.ike-law.com